IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| TAWR PROPERTY OWNER, LTD., *et al.*, | § | Case No. 26-90162-elm-11 |
| | § | |
| Debtors.[1] | § | Jointly Administered |

# AMENDED JOINT PLAN OF REORGANIZATION OF THE DOVE CREEK DEBTORS: (I) TADC PROPERTY OWNER, LTD.; (II) TADC PARTNERSHIP, LTD.; AND (III) TACARA AT DOVE CREEK GP, LLC

Davor Rukavina, Esq.
Texas Bar No. 24030781
Garrick C. Smith, Esq.
Texas Bar No. 24088435
Jonathan S. Petree, Esq.
Texas Bar No. 24116897
**MUNSCH HARDT KOPF & HARR, P.C.**
500 N. Akard Street, Suite 4000
Dallas, Texas 75201
Telephone: (214) 855-7500

**ATTORNEYS FOR THE
DEBTORS-IN-POSSESSION**

DATED: ~~August 22~~September 16, 2026.

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if any, are: C-5 Holdings, LLC (9822); C-5 Investors Mezz, LLC (9625); Baxter Contracting, LLC (2298); TAWR Property Owner, Ltd. (0544); TASH Property Owner, LLC (4107); TAWR Partnership, Ltd. (4172); Tacara Weiss Ranch Investors GP, LLC (4493); TAWR Preferred Partnership, LP (6900); Tacara at Weiss Ranch GP, LLC (4253); Tacara at Steubing Heights Holdings, LLC (1354); TASH Partnership, Ltd. (2168); Tacara at Steubing Heights GP, LLC (8403); Baxter Southwest Corporate Realty Services, Inc. (0163); Casey Calaveras LLC (1947); Casey Pearce LLC (8715); Casey UB GP, LLC (3841); Casey UB Partnership, Ltd. (7931); Casey UB Property Owner, Ltd. (9499); Casey Ventures, Inc. (0166); DCI Developers LLC (2552); "One Hailey Casey Limited" (8511); River Mill NB, LLC (6976); Stone Oak Retail GP, LLC (6923); Stone Oak Retail Partners, Ltd. (0495); Westpointe Retail Center, L.L.C. (8822); Tacara at Dove Creek GP, LLC (6070); TADC Partnership, Ltd. (5488); TADC Property Owner, Ltd. (1036); TAGS Partnership GP, LLC (4980); TAGS Partnership, Ltd. (5458); TAGS Property Owner, Ltd. (4551). The location of the Debtors' service address is 200 E. Basse, Suite 300, San Antonio, Texas 78209.

# TABLE OF CONTENTS


ARTICLE I: DEFINITIONS AND INTERPRETATION ....................................................1

ARTICLE II: CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS....................10

ARTICLE III: PROVISIONS FOR THE TREATMENT OF UNCLASSIFIED CLAIMS .....10

ARTICLE IV: PROVISIONS FOR THE TREATMENT OF CLASSIFIED CLAIMS ...........12

ARTICLE V: MEANS FOR IMPLEMENTATION OF THE PLAN ....................................17

ARTICLE VI: ACCEPTANCE OR REJECTION OF PLAN ................................................20

ARTICLE VII: TREATMENT OF DISPUTED CLAIMS AND OBJECTIONS TO CLAIMS ..........................................................................................................................20

ARTICLE VIII: EFFECTS OF PLAN CONFIRMATION ......................................................22

ARTICLE IX: CONDITIONS PRECEDENT .......................................................................23

ARTICLE X: RETENTION OF JURISDICTION AND CLAIMS........................................24

ARTICLE XI: MISCELLANEOUS PROVISIONS ..............................................................27

ARTICLE XII: CONFIRMATION REQUEST .......................................................................29

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| TAWR PROPERTY OWNER, LTD., *et al.*, | § | Case No. 26-90162-elm-11 |
| | § | |
| Debtors. | § | Jointly Administered |

**AMENDED JOINT PLAN OF REORGANIZATION OF THE DOVE CREEK DEBTORS: (I) TADC PROPERTY OWNER, LTD.; (II) TADC PARTNERSHIP, LTD.; AND (III) TACARA AT DOVE CREEK GP, LLC**

The Dove Creek Debtors (defined below), being certain of the debtors-in-possession in the above styled and numbered jointly administered Bankruptcy Case (defined below), hereby propose the following *Amended Joint Plan of Reorganization* pursuant to section 1121 of the Bankruptcy Code.

## ARTICLE I
## DEFINITIONS AND INTERPRETATION

1.1 Rules of Interpretation.

(i) Unless otherwise specified, all Section, Article, and Exhibit references in this Plan are to the respective Section in, or Article of, this Plan, as the same may be amended, waived or modified from time to time. Words denoting the singular number shall include the plural number and *vice versa*. In construing this Plan, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply.

(ii) In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006 shall apply.

(iii) Where a creditor or holder of any right under this Plan is named by name, such naming shall include any successor-in-interest to any right of such creditor (although the Plan is otherwise already binding on all parties-in-interest and creditors).

(iv) This Plan affects the Dove Creek Debtors and Dove Creek Estates only. Unless expressly and explicitly stated otherwise in this Plan, and reference to a "debtor," "estate," "claim," or similar thing means to the Dove Creek Debtors, Dove Creek Estates, and claims against the same.

1.2 Definitions. Terms and phrases, whether capitalized or not, that are used and not defined in this Plan, but that are defined in the Bankruptcy Code, have the meanings ascribed to them in the Bankruptcy Code. Unless otherwise provided in this Plan, the following terms have

the respective meanings set forth below, and such meanings shall be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires.

"**Adequate Protection Payments**" means all adequate protection payments and similar payments made after the Petition Date by the Dove Creek Debtors to ANI pursuant to any Cash Collateral Order.

"**Administrative Claim**" means a Claim for any cost or expense of administration of the Bankruptcy Case under section 503(b) of the Bankruptcy Code asserted against any of the Dove Creek Debtors, including, without limitation, any fees or charges assessed against a Dove Creek Estate pursuant to 28 U.S.C. § 1930, and further including a Professional Claim. For the avoidance of doubt, Administrative Claims do not include Secured Tax Claims.

"**Administrative Claims Bar Date**" means the day that is thirty (30) days after the Effective Date.

"**Administrative Tax Claim**" means any *ad valorem* tax claim assessed against, or payable by, the Dove Creek Debtors or the Dove Creek Estates or their property for or on account of a period after the Petition Date, specifically excluding Secured Tax Claims.

"**Allowed**" as it relates to any type of Claim provided for under this Plan, but excluding a Professional Claim, means a Claim:

(i) which has been scheduled as undisputed, noncontingent and liquidated in the Schedules in an amount other than zero or unknown, and as to which:
   a. no Proof of Claim has been timely filed; and
   b. no objection has been timely filed (as determined by applicable deadlines contained in this Plan, including the Claims Objection Deadline);

(ii) as to which a Proof of Claim has been timely filed and either:
   a. no objection thereto has been timely filed (as determined by applicable deadlines contained in this Plan, including the Claims Objection Deadline); or
   b. such Claim has been allowed (but only to the extent allowed) by a Final Order of the Bankruptcy Court;

(iii) which has been expressly allowed under the provisions of this Plan; or

(iv) which has been expressly allowed by Final Order of the Bankruptcy Court, including the Cash Collateral Order.

"**Allowed Administrative Claim**" means: (i) an Administrative Claim that has been Allowed (but only to the extent Allowed), if approval from the Bankruptcy Court is required in order for the same to become Allowed; or (ii) an Administrative Claim which: (a) is incurred by the Dove Creek Debtors after the Petition Date in the ordinary course of business operations or pursuant to an order entered by the Bankruptcy Court granting automatic Administrative Claim status; (b) is not disputed by the Dove Creek Debtors,

the Reorganized Debtors, or any party with standing; and (c) does not require approval from the Bankruptcy Court to become Allowed.

"**Allowed Priority Claim**" means a Priority Claim that has been Allowed (but only to the extent Allowed).

"**Allowed Secured Claim**" means a Secured Claim that has been Allowed (but only to the extent Allowed), including, without limitation, any Secured Claim arising under or preserved by the Cash Collateral Orders.

"**Allowed Unsecured Claim**" means an Unsecured Claim that has been Allowed (but only to the extent Allowed).

"**ANI**" means American National Insurance Company.

"**ANI Loan Documents**" means all promissory notes, deeds of trust, fixture filings, grants of security interests, and other instruments and agreements between any of the Dove Creek Debtors and ANI, including that certain *Promissory Note* dated September 15, 2021 between Dove Creek PropCo and ANI in the original principal amount of $41,385,000.00, that certain *Promissory Note* dated September 15, 2021 between Dove Creek PropCo and ANI in the original principal amount of $5,515,000.00, that certain *Deed of Trust, Security Agreement, and Financing Statement* dated September 15, 2021 and issued by Dove Creek PropCo to ANI and recorded at instrument number 20210257874 with Bexar County, Texas against the Property, and that certain *Absolute Assignment of Lease and Rents* dated September 15, 2021 and issued by Dove Creek PropCo to ANI and recorded at instrument number 20210257875 with Bexar County, Texas against the Property.

"**ANI Secured Claim**" means all Claims, rights, and interests of ANI against the Dove Creek Debtors and the Dove Creek Estates, and the property of any of the foregoing, including the Property, arising under or related to the ANI Loan Documents, the Cash Collateral Orders, applicable law, or otherwise, including, without limitation, all principal, accrued and unpaid interest (including default interest), fees, expenses, costs, charges, and other amounts recoverable under the applicable ANI Loan Documents, the Cash Collateral Orders, and applicable law, and including all Claims, rights, and interests as asserted by Claim No. 3 in the Claims Register of Dove Creek PropCo. For the avoidance of doubt, except as otherwise expressly provided in this Plan, nothing in this Plan shall release, impair, discharge, modify, or otherwise affect any claims or rights of ANI against any of the Remaining Debtors, the Remaining Estates, or any non-Debtor, including any Guarantor. For the further avoidance of doubt, the ANI Secured Claim does not include any claim of ANI against any of the Remaining Debtors or the Remaining Estates.

"**Avoidance Actions**" means any and all rights, claims or actions which the Dove Creek Debtors may assert on behalf of the Dove Creek Estates under Chapter 5 of the Bankruptcy Code, including actions under one or more provisions of sections 328, 542, 544, 545, 546, 547, 548, 549, 550, 551 and/or 553 of the Bankruptcy Code. Avoidance Actions shall not include: (i) any causes of action released, waived, or transferred

pursuant to the Cash Collateral Orders or this Plan; or (ii) any claims or causes of action against ANI or its affiliates, agents, representatives, professionals, or lenders.

"**Bankruptcy Case**" means jointly administered Bankruptcy Case No. 26-90162-elm-11 in the Bankruptcy Court.

"**Bankruptcy Code**" means 11 U.S.C. §§ 101, *et seq.*, in effect as of the Petition Date and as may have been or may be amended or supplemented since, to the extent that any such amendment or supplement is automatically applicable to the Bankruptcy Case by operation of law and not by operation of any election or choice.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division or, if such court ceases to exercise jurisdiction, the court or adjunct thereof that exercises jurisdiction over the Bankruptcy Case.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, together with the local bankruptcy rules for the Bankruptcy Court as now in effect or as the same may from time-to-time hereafter be amended.

"**Bar Date**" means, with respect to each Dove Creek Debtor, the date established by an order of the Bankruptcy Court or by a provision of the Bankruptcy Code or Bankruptcy Rules by which any given creditor must file a Proof of Claim against that Dove Creek Debtor's estate.

"**Business Day**" means any day which is not a Saturday, a Sunday, or a "legal holiday" within the meaning of Bankruptcy Rule 9006(a).

"**Cash Collateral Order**" means each cash collateral order for or affecting the Dove Creek Debtors entered by the Bankruptcy Court in the Bankruptcy Case, including the orders at Docket Nos. 215, 373, and 378. Except as expressly provided herein, nothing in this Plan or the Confirmation Order shall impair, modify, waive, release, or otherwise affect the rights, claims, liens, protections, findings, stipulations, acknowledgments, or remedies granted to ANI under the Cash Collateral Orders.

"**Claim**" means any claim against one or more of the Dove Creek Debtors, the Dove Creek Estates, and/or property of the Dove Creek Debtors or the Dove Creek Estates, as such term is otherwise defined in section 101(5) of the Bankruptcy Code, and arising at any time prior to the Effective Date, including first arising after the Petition Date, regardless of whether the same would otherwise be a claim under said section 101(5) of the Bankruptcy Code, whether a timely or untimely Proof of Claim is filed or not. "Claim" includes a claim against one or more of the Remaining Debtors in the Bankruptcy Case but only if also asserted or assertable against the Dove Creek Debtors and the Dove Creek Estates, in which case any treatment, discharge, and payment of such Claim in this Plan applies to and affects such Claim only to the extent asserted or assertable against the Dove Creek Debtors and the Dove Creek Estates and not against any of the Remaining Debtors or any of their liabilities on such Claim. In other words, unless expressly and explicitly stated otherwise in this Plan, no Claim against a Remaining Debtor or Remaining Estate is modified under this Plan; *provided, however*,

that all claims against the Dove Creek Debtors and the Dove Creek Estates are modified under this Plan.

**"Claims Objection Deadline"** means the date by which parties authorized by the Plan may file any objection to a Claim, which date shall be 120 days after the Effective Date, except with respect to Administrative Claims as otherwise provided for herein and with respect to Disputed Claims.

**"Class"** means one of the categories of Claims and Equity Interests established under Article II of this Plan.

**"Confirmation Date"** means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on its docket.

**"Confirmation Hearing"** means the hearing(s) before the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing(s) may be continued, rescheduled or delayed.

**"Confirmation Order"** means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, as such order may be amended, modified, or supplemented.

**"Creditor"** means the holder of any Claim against one or more Dove Creek Debtors, whether or not the Creditor has filed a Proof of Claim, is scheduled, or has appeared in the Bankruptcy Case.

**"Cure Claim"** means a Claim arising under section 365 of the Bankruptcy Code in connection with the assumption of any Executory Contract, but only to the extent required to cure defaults existing as of the effective date of assumption under section 365(b) of the Bankruptcy Code.

**"Debtors"** means each debtor being jointly administered in the Bankruptcy Case as of the date of the Confirmation Order, and as to which no plan of reorganization (or liquidation) has become effective as of such date, including ,with the last four digits of their federal tax identification numbers: C-5 Holdings, LLC (9822); C-5 Investors Mezz, LLC (9625); Baxter Contracting, LLC (2298); TAWR Property Owner, Ltd. (0544); TASH Property Owner, LLC (4107); TAWR Partnership, Ltd. (4172); Tacara Weiss Ranch Investors GP, LLC (4493); TAWR Preferred Partnership, LP (6900); Tacara at Weiss Ranch GP, LLC (4253); Tacara at Steubing Heights Holdings, LLC (1354); TASH Partnership, Ltd. (2168); Tacara at Steubing Heights GP, LLC (8403); Baxter Southwest Corporate Realty Services, Inc. (0163); Casey Calaveras LLC (1947); Casey Pearce LLC (8715); Casey UB GP, LLC (3841); Casey UB Partnership, Ltd. (7931); Casey UB Property Owner, Ltd. (9499); Casey Ventures, Inc. (0166); DCI Developers LLC (2552); "One Hailey Casey Limited" (8511); River Mill NB, LLC (6976); Stone Oak Retail GP, LLC (6923); Stone Oak Retail Partners, Ltd. (0495); Westpointe Retail Center, L.L.C. (8822); Tacara at Dove Creek GP, LLC (6070); TADC Partnership, Ltd. (5488); TADC Property Owner, Ltd. (1036); TAGS Partnership GP, LLC (4980); TAGS Partnership, Ltd. (5458); TAGS Property Owner, Ltd. (4551).

"**Disallowed Claim**" means, as it relates to any type of Claim provided for under this Plan, except an Administrative Claim (or a Professional Claim), a Claim or portion thereof that:

(i) has been disallowed, subordinated, expunged, or estimated at zero by a Final Order of the Bankruptcy Court;

(ii) is identified in the Schedules in an amount of zero dollars, unknown dollars, or as contingent, unliquidated, and/or disputed, and as to which a Proof of Claim was not filed by the Bar Date;

(iii) is not identified in the Schedules and as to which no Proof of Claim has been filed or deemed filed by the Bar Date, if the filing of such Proof of Claim is otherwise required; or

(iv) has been withdrawn, waived, satisfied, superseded, or otherwise resolved.

"**Disclosure Statement**" means the Disclosure Statement with respect to this Plan, conditionally approved or approved by the Bankruptcy Court as containing adequate information for the purpose of dissemination and solicitation of votes on confirmation of this Plan, either in its present form or as it may be altered, amended or modified from time to time.

"**Disputed Claim**" means, any Claim, or any portion thereof, that (a) is not yet Allowed, (b) is not a Disallowed Claim by the Plan, the Bankruptcy Code, or a Final Order, as applicable, (c) as to which a dispute is being adjudicated by the Bankruptcy Court, including a dispute about the liability, amount, validity, enforceability, priority, extent, perfection, or secured status of such Claim under section 506(a) of the Bankruptcy Code or otherwise, or another court of competent jurisdiction in accordance with non-bankruptcy law, or (d) is or is hereafter listed in the Schedules as contingent, unliquidated, or disputed and for which a Proof of Claim is or has been timely filed in accordance with the Bar Date or the Plan.

"**Dove Creek PropCo**" means TADC Property Owner, Ltd., one of the Dove Creek Debtors.

"**Dove Creek Debtors**" means: (i) TADC Property Owner, Ltd.; (ii) TADC Partnership, Ltd.; and (iii) Tacara at Dove Creek GP, LLC.

"**Dove Creek Estates**" means the Estates created of each of the Dove Creek Debtors.

"**Effective Date**" means the first Business Day after which the conditions to the effectiveness of the Plan set forth in Article IX hereof have been satisfied or waived by the Dove Creek Debtors.

"**Equity Interests**" means any ownership of any equity in the Dove Creek Debtors, including, as may be applicable, any membership unit, partnership interest, share, stock, or stock certificate.

“**Estate**” means the estates created for each of the Debtors pursuant to section 541 of the Bankruptcy Code and any other applicable provision thereof. Unless otherwise expressly provided in this Plan or the Confirmation Order, no Estate shall be deemed substantively consolidated with any other Estate.

“**Executory Contract**” means, collectively, “executory contracts” and “unexpired leases” of the Dove Creek Debtors as of the Petition Date as such terms are used within section 365 of the Bankruptcy Code, but excluding Tenant Leases.

“**Final Decree**” means the final decree entered by the Bankruptcy Court on or after the Effective Date pursuant to Bankruptcy Rule 3022.

“**Final Order**” means a judgment, order, ruling, or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal having jurisdiction over the subject matter thereof which judgment, order, ruling, or other decree has not been reversed, stayed, modified, or amended and as to which:

(i) the time to appeal or petition for review, rehearing or certiorari has expired and as to which no appeal or petition for review, rehearing or certiorari is pending; or

(ii) any appeal or petition for review, rehearing or certiorari has been finally decided and no further appeal or petition for review, rehearing or certiorari can be taken or granted.

“**Governmental Unit**” means a governmental unit as such term is defined in section 101(27) of the Bankruptcy Code.

“**Guarantor**” means any guarantor of the Dove Creek Debtors’ obligations under the ANI Loan Documents.

“**Person**” means and includes natural persons, corporations, limited partnerships, general partnerships, joint ventures, trusts, land trusts, business trusts, unincorporated organizations, or other legal entities, irrespective of whether they are governments, agencies or political subdivisions thereof.

“**Petition Date**” means, with respect to each Dove Creek Debtor, the date on which it filed its Chapter 11 petition for relief as jointly administered in the Bankruptcy Case.

“**Plan**” means this *Amended Joint Plan of Reorganization of Dove Creek Debtors: (i) TADC Property Owner, Ltd.; (ii) TADC Partnership, Ltd.; and (iii) Tacara at Dove Creek GP, LLC*, including all exhibits, annexes, supplements, and schedules hereto, either in its present form or as it may be altered, amended, modified, or supplemented from time to time.

Formatted: Font: Italic

“**Plan Supplement**” means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan (in each case, as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules) to be filed by

the Dove Creek Debtors no later than seven (7) days before the commencement of the Confirmation Hearing.

"**Priority Claim**" means any Claim entitled to priority in payment under section 507(a) of the Bankruptcy Code, excluding any Claim that is an Administrative Claim, a Professional Claim, a Secured Tax Claim, or the ANI Secured Claim.

"**Professional**" means any Person retained by order of the Bankruptcy Court in connection with the Bankruptcy Case pursuant to sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code.

"**Professional Claim**" means a Claim by a Professional for compensation and/or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code in connection with an application made to the Bankruptcy Court.

"**Proof of Claim**" means a proof of Claim filed against any of the Dove Creek Debtors in the Bankruptcy Case.

"**Property**" means all real and personal property owned by Dove Creek PropCo and generally located at 189 Empresario Drive, San Antonio, TX 78245, including the 321-unit Class A multi-family residential project thereat and all improvements and fixtures thereon.

"**Rejection Damages Claim**" means any Claim arising from the rejection of an Executory Contract by the Dove Creek Debtors pursuant to section 365 of the Bankruptcy Code, but excluding any Administrative Claim arising from or relating to the period after the Petition Date and prior to the effective date of rejection.

"**Rejection Damages Claim Bar Date**" means the day that is thirty (30) days after the Effective Date, if the Executory Contract giving rise to the Rejection Damages Claim is rejected under this Plan.

"**Remaining Debtors**" means the Debtors, excluding the Dove Creek Debtors.

"**Remaining Estates**" means the Estates, excluding the Dove Creek Estates.

"**Reorganized Debtor**" means a Dove Creek Debtor on and after the Effective Date.

"**Reorganized Debtors**" means the Dove Creek Debtors on and after the Effective Date.

"**Schedules**" means the Schedules of Assets and Liabilities and the Statements of Financial Affairs filed by the Dove Creek Debtors with the clerk of the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they have been or may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009.

"**Secured Claim**" means a Claim that is alleged to be secured, in whole or in part, (i) by a valid, perfected, enforceable, and nonavoidable lien against an asset of the Dove Creek

Debtors or the Dove Creek Estates; or (ii) as a result of rights of setoff under section 553 of the Bankruptcy Code.

**"Secured Tax Claim"** means a Claim of a Governmental Unit for the payment of *ad valorem* real property and business personal property taxes that is secured by property of the Dove Creek Debtors or the Dove Creek Estates arising prior to the Petition Date even if first payable after the Petition Date.

**"Substantial Consummation"** means the date on which any of the following first happens: (i) the Effective Date or (ii) the Bankruptcy Court otherwise finds that substantial consummation within the meaning and operation of the Bankruptcy Code has occurred.

**"Tenant Leases"** means each lease whereby a tenant leases or rents any portion of the Property, either from the Dove Creek PropCo or an agent thereof.

**"Unsecured Claim"** means any alleged Claim against a Dove Creek Debtor that is not an Allowed Secured Claim and that is not entitled to any administrative or priority status under the Bankruptcy Code.

## ARTICLE II.
## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

2.1 Classification Generally. All Claims and Equity Interests, except Administrative Claims, are placed in Classes under the Plan. A Claim is classified within a particular Class only to the extent that the Claim qualifies under the description of that Class. A Claim which is properly includible in more than one Class is only entitled to inclusion within a particular Class to the extent that it qualifies under the description of such Class, and shall be included within a different Class(es) to the extent that it qualifies under the description of such different Class(es).

2.2 Unclassified Claims. The following types of Claims are not classified under the Plan:

Administrative Claims

Administrative Tax Claims

2.3 Classified Claims and Interests. Claims and Equity Interests are classified under this Plan as follows:

| | |
|---|---|
| Class 1: | Priority Claims |
| Class 2: | Secured Tax Claims |
| Class 3: | ANI Secured Claim |
| Class 4: | Other Secured Claims |
| Class 5: | Unsecured Claims |
| Class 6: | Equity Interests |

## ARTICLE III.
## PROVISIONS FOR THE TREATMENT OF UNCLASSIFIED CLAIMS

3.1 Administrative Claim Applications and Deadline. Holders of Administrative Claims, including Professional Claims, other than: (a) Allowed Administrative Claims as of the Effective Date; (b) Administrative Claims that represent liabilities incurred on or after the Petition Date, but prior to the Effective Date, in the ordinary course of the Dove Creek Debtors' businesses which may be paid in the ordinary course of the Dove Creek Debtors' businesses without order of the Bankruptcy Court; and (c) Administrative Claims that constitute fees or charges assessed against the Dove Creek Estates under Chapter 123, Title 28, United States Code, must by no later than the Administrative Claims Bar Date: (x) file an application with the Bankruptcy Court for allowance of the Administrative Claim; and (y) serve a copy of such application on the Debtors, the United States Trustee, and all other parties otherwise entitled to notice thereof. Failure to file and serve such application by the Administrative Claims Bar Date shall result in the Administrative Claim being forever barred and discharged as against the Dove Creek Debtors, the Dove Creek Estates, the Reorganized Debtors, and the property of any of the foregoing, including property transferred pursuant to the Plan. Except as specifically provided in this Plan, nothing in this Plan alters the law applicable to, and governing, the allowance of Administrative Claims (including Professional Claims) under the Bankruptcy Code.

3.2 Treatment of Allowed Administrative Claims. Except with respect to Administrative Tax Claims (see Section 3.4 below) and Professional Claims (see Section 3.3 below), and unless previously paid, each holder of an Allowed Administrative Claim, including a Professional Claim, shall be paid in full satisfaction, release and discharge of, and in exchange for, such Allowed Administrative Claim, the amount of such Allowed Administrative Claim by the Reorganized Debtors, in cash, and without interest, attorney's fees (except as Allowed by the Bankruptcy Court), or costs, no later than ten (10) Business Days after the Effective Date or the date that such claim becomes payable, solely from cash on hand, except to the extent that a holder of an Allowed Administrative Expense Claim agrees to less favorable treatment.

3.3 Treatment of Professional Claims.

3.3.1 Allowance and Payment of Professional Claims. Professional Claims become Allowed the same as Administrative Claims in this Article (Section 3.1), and are treated the same as Administrative Claims in this Article (Section 3.2), except that: (i) a Professional Claim that has been previously Allowed on a final (not interim) basis by Final Order of the Bankruptcy Court is not subject to the filing requirements provided for in Section 3.1; (ii) a Professional Claim that has been Allowed on an interim basis (not final) in whole or in part shall, with respect to being Allowed on a final basis, remain subject to the filing of an application for its allowance as provided for in Section 3.1 and shall be subject to such law, rules, and procedures as would be otherwise applicable to the same outside of this Plan; (iii) a Professional Claim that has been previously Allowed and paid on a final basis by Final Order of the Bankruptcy Court shall be deemed satisfied in full and shall not be subject to any further application, allowance, or payment under this Plan; (iv) any interim payments on account of a Professional Claim shall be credited against the final Allowed amount of such Professional Claim; and (v) any retainer provided on account of a Professional Claim shall be credited and applied against the payment of the final Allowed amount of such Professional Claim once such Professional Claim is Allowed on a final basis, to the extent remaining.

3.3.2 Treatment of Unpaid, Allocated, and Unallocated Professional Claims. To the extent any Professional has not been paid the full amount of its Allowed Professional Claim from any retainer or from interim payments, all as of the Allowance of such Professional Claim, the Reorganized Debtors shall, jointly and severally, pay any remaining unpaid Allowed Professional Claim no later than ten (10) days after the entry of an order allowing the same from cash on hand. All fees and expenses of a Professional, otherwise Allowed by the Bankruptcy Court, and attributable (i) solely to one or more of the Dove Creek Debtors shall be so paid and, (ii) with respect to such Allowed fees and expenses not allocated to one or more of the Dove Creek Debtors but otherwise properly allocated to all of the Debtors, 16.96% of such fees and expenses shall be so paid. For the avoidance of doubt, nothing in this Plan changes or alters any issue, fact, or law applicable to any allocation, reallocation, documentation, or other issue applicable to a Professional providing services to a number of debtors, and the Bankruptcy Court shall determine all such issues with the only material change by the Plan is that 16.96% of otherwise properly unallocated and allowed fees and expenses of Professionals in the Bankruptcy Case as of the Confirmation Date shall be paid by the Dove Creek Debtors, Dove Creek Estates, and the Reorganized Debtors.

3.4 Administrative Tax Claims. Administrative Tax Claims, and any liens securing the same, are not affected by, prejudiced by, discharged by, or treated by this Plan, and shall survive this Plan without need for any action on the part of the holder thereof, subject in all respects to the relative validity, extent, enforceability, and priority of existing liens under applicable law. Administrative Tax Claims, and the liens securing the same, shall be paid when and as otherwise appropriate, together with such interest and other charges as otherwise appropriate, as soon as possible after the Effective Date or when the same otherwise become due and payable. Notwithstanding anything contained in this Plan to the contrary, nothing in this Plan transfers or vests any property of the Dove Creek Debtors or the Dove Creek Estates free and clear of any lien securing an Administrative Tax Claim, and nothing herein shall subordinate, impair, prime, surcharge, or otherwise adversely affect the validity, enforceability, extent, perfection, or priority of the liens securing the Allowed ANI Secured Claim. Any and all rights to contest any Administrative Tax Claim, including as may be appropriate under section 505 of the Bankruptcy Code, are preserved and vest in the Reorganized Debtors as of the Effective Date.

3.5 Section 505. For the avoidance of doubt, and without limiting the generality of any similar provision of this Plan, the Dove Creek Debtors and the Dove Creek Estates reserve all rights under section 505 of the Bankruptcy Code, as otherwise applicable, to contest any tax Claim and to seek appropriate determinations under said section 505 with respect thereto, and transfer the same hereunder to the Reorganized Debtors.

## ARTICLE IV.
## PROVISIONS FOR THE TREATMENT OF CLASSIFIED CLAIMS

4.1 Class 1: Priority Claims. Class 1 consists of all Allowed Priority Claims. Nothing in this Plan allows any Priority Claim, and the Dove Creek Debtors and the Dove Creek Estates reserve all rights to object to any Priority Claim, which rights are vested in the Reorganized Debtors. In full and final satisfaction, release and discharge of, and in exchange for, each Priority Claim, the Reorganized Debtors shall pay each Priority Claim, to the extent Allowed, and without any interest, attorney's fees, or other charges or penalties arising after the Petition Date or Effective Date, in cash from cash on hand, no later than ten (10) Business Days after becoming Allowed, except to the extent that a holder of an Allowed Priority Claim agrees to less favorable treatment. Class 1 is not impaired under this Plan.

4.2 Class 2: Secured Tax Claims.

4.2.1 Retention of Liens. Notwithstanding anything contained in this Plan to the contrary, each holder of a Secured Tax Claim shall retain all liens securing the same, which liens shall survive confirmation of this Plan with the same priority, extent, and validity that otherwise exists. The Class 2 Claim shall be Allowed in the estimated amount of $1,321,259.16 (the "Allowed Class 2 Claim"), subject only to such tax protest as may be appropriate under applicable law. Notwithstanding anything contained in the Plan to the contrary, Bexar County shall be permitted to amend its estimated claim once the current year (Year 2026) taxes are assessed without further order of the Court and re-amortize the Plan payments to reflect any change in the actual claim amount.

4.2.2 Interest. All interest payable on account of a Secured Tax Claim shall accrue at the rate set by Texas law. The portion of the Allowed Class 2 Claim for Year 2025 taxes shall accrue interest prior to and after the Petition Date (from February 1, 2026) at twelve percent (12%) per annum, and shall continue to accrue interest after the Effective Date at twelve percent (12%) per annum until paid in full. The portion of the Allowed Class 2 Claim for Year 2026 shall commence accruing interest at twelve percent (12%) per annum on and after February 1, 2027 until paid in full.

4.2.3 Treatment. Each Secured Tax Claim, to the extent Allowed, Class 2 Claim shall be paid in full satisfaction, release and discharge of, and in exchange for, such Allowed Secured Tax Claim and any lien securing the same, including all prepetition and postpetition interest, fees, and costs as provided under otherwise applicable nonbankruptcy law, but without any postpetition penalties, by the Reorganized Debtors through eight (8four (4) equal quarterly payments of principal, and interest to-then accrued on any unpaid principal balance remaining, with the first such payment payable by the end of the fourth quarter of 2026, and each subsequent payment payable by the end of the succeeding quarter.

4.2.4In the event the Reorganized Debtors sell, convey or transfer any of their properties which are the collateral of the Allowed Class 2 Claim or post confirmation tax debt, the Reorganized Debtors shall remit such sales proceeds first to Bexar County to be applied to the Allowed Class 2 Claim incident to any such property/tax account sold, conveyed or transferred and such proceeds shall be disbursed by the closing agent at the time of closing prior to any disbursement of the sale proceeds to any other person or entity.

The Reorganized Debtors shall pay all post-petition ad valorem tax liabilities (tax year 2027 and subsequent tax years) owing to Bexar County in the ordinary course of business as such tax debt comes due and prior to said ad valorem taxes becoming delinquent without the need of Bexar County to file an administrative expense claim and/or request for payment.

4.2.4 Prepayment. The Reorganized Debtors may pre-pay the Allowed Class 2 Claim at any time. The Reorganized Debtors shall have one hundred twenty (120) days from the Effective Date to object to the Bexar County claim; otherwise, the Bexar County claim shall be deemed as an allowed secured claim in the amount of its amended Proof of Claim. Bexar County shall retain its statutory lien securing its pre-petition and post-petition tax debts until such time as the tax debt respective to each property are paid in full.

4.2.5 Default. Should the Reorganized Debtor fails to make any payments as required in this Plan to Class 2, Bexar County shall provide written notice of that default by sending written notice to the notice parties provided below in this Plan, and providing the Reorganized Debtors with a period of ten (10) days to cure the default. In the event that the default is not cured within ten (10) days, Bexar County may, without further order of the Court or notice to the Reorganized Debtors, pursue all of their rights and remedies available to them under the Texas Property Tax Code to collect the full amount

of all taxes, penalties and interest owed. Additionally, the failure to timely pay post-petition and/or post-confirmation taxes while the Reorganized Debtors are still paying the Allowed Class 2 Claim, shall be considered an event of default. Bexar County shall provide the Reorganized Debtors with written notice of that default and a ten (10) day opportunity to cure said default. In the event that the Reorganized Debtors fail to timely cure the post-petition and/or post-confirmation default, Bexar County may, without further order of this court or notice to the Reorganized Debtors, pursue all of their rights and remedies available to them under the Texas Property Tax Code to collect the full amount of all taxes, penalties and interest owed. The Reorganized Debtors shall be entitled to no more than two (2) Notices of Default. In the event of a third (3rd) default, Bexar County may pursue all rights and remedies available to it under the Texas Property Tax Code in state district court without further order of this court or further notice to the Reorganized Debtors.

4.2.6 Impairment. Class 2 is impaired under this Plan.

4.3 Class 3: ANI Secured Claim.

4.3.1 Identification of Class. Class 3 consists of the ANI Secured Claim and, additionally, includes all claims, rights, interests, and remedies of ANI arising at any time between the Petition Date and the Effective Date against the Dove Creek Debtors, including any claim for diminution in value of collateral, superpriority administrative claims, adequate protection claims, and claim under section 506(b) of the Bankruptcy Code. For the avoidance of doubt, nothing in this Plan alters, prejudices, or affects any of ANI's rights, claims, remedies, and liens and interests against any of the Remaining Debtors and the Remaining Estates or any non-Debtor obligor, except as expressly set forth herein.

4.3.2 Allowance of Claim. Class 3 is Allowed as a fully Secured Claim in the following amounts (the "Allowed ANI Secured Claim"): (i) the amount of $45,965,103.73 as of the Petition Date; (ii) *plus* all accrued and unpaid interest arising after the Petition Date through the Effective Date at the non-default rate provided under the ANI Loan Documents; (iii) *plus* all reasonable attorney's fees and expenses, costs of collection, and all other fees, expenses, costs, charges, and amounts recoverable under the ANI Loan Documents, the Cash Collateral Orders, section 506(b) of the Bankruptcy Code, and applicable law; (iv) *minus* all Adequate Protection Payments, if any, actually received by ANI from the Dove Creek Debtors between the Petition Date and the Effective Date. The Bankruptcy Court shall determine, upon motion practice, any dispute as to the allowance or amount of any claim under subsection (iii) of this paragraph.

4.3.3 Liens. Notwithstanding anything contained in this Plan or the Confirmation Order to the contrary, ANI shall retain all liens and security interests securing the Allowed ANI Secured Claim, including as against the Property, which liens and security interests shall survive confirmation of this Plan with the same priority, extent, and validity that otherwise existed immediately prior to the Effective Date and shall attach to all collateral, proceeds, products, rents, profits, accounts, deposit accounts,

cash collateral, and other property of the Dove Creek Propco to the fullest extent provided under the ANI Loan Documents, the Cash Collateral Orders, and applicable non-bankruptcy law. Such liens and security interests shall remain perfected without the necessity of filing or recording any additional document or instrument. Such liens and security interests shall additionally secure all obligations of the Reorganized Debtors to ANI arising on and after the Effective Date under this Plan, the ANI Loan Documents, or otherwise. No property shall vest in the Reorganized Debtors free and clear of the liens securing the Allowed ANI Secured Claim unless and until such claim has been indefeasibly paid in full in cash. Such liens shall be fully enforceable, including through foreclosure, execution, or receivership, upon any uncured default by the Reorganized Debtors to ANI under this Plan, as otherwise provided for by Texas law.

4.3.4 Treatment. In full and final satisfaction, release, and discharge of the Allowed ANI Secured claim, including all accrued and unpaid postconfirmation interest, default interest, attorneys' fees, expenses, costs, and other amounts recoverable under this Plan, the Reorganized Debtors shall pay in full the Allowed ANI Secured Claim as follows, all secured by ANI's liens against the Property:

(i) Interest. Interest shall accrue on and after the Effective Date on the Allowed ANI Secured Claim at the rate of 4.75% simple interest per annum, calculated on the principal amount of the Allowed ANI Secured Claim then remaining unpaid;

(ii) Interest Only Payments for One Year. For each month after the Effective Date, and due by the first day of the month that is at least thirty (30) days after the Effective Date and then by the first day of each succeeding month, the Reorganized Debtors shall pay to ANI monthly payments of interest (under subsection 4.3.4(i) above) only on the Allowed ANI Secured Claim for the first such twelve (12) succeeding months;

(iii) Six Years of Principal and Interest Payments. Thereafter, commencing with the thirteenth (13th) such month and continuing monthly, by the first day of each succeeding month, through to the eighty-fourth (84th) such month, each monthly payment shall include interest (under subsection 4.3.4(i) above) and a principal payment calculated on the basis of a thirty (30) year amortization; and

(iv) Balloon Payment. A final, balloon payment of all remaining unpaid principal, interest, and other charges preserved or allowed under this Plan shall be paid by the end of the eighty-fifth (85th) such month.

(v) Payment Schedule. The Dove Creek Debtors shall, at the Confirmation Hearing, provide for a monthly payment schedule, for illustrative purposes only, as the final amount of the Allowed ANI Secured Claim shall not at that time be known (unless such amount is agreed to by the Dove Creek Debtors and ANI by that time). Any dispute as to the actual payment schedule shall be determined by the Bankruptcy Court upon motion practice.

(vi) No Prepayment Penalty. Notwithstanding anything contained in the ANI Loan Documents (including as they may be amended or modified pursuant to this Plan) to the contrary, the Reorganized Debtors may prepay the Allowed ANI Secured Claim then remaining outstanding, in full or in part, at any time, and without penalty, yield maintenance, or other charge, fee, or expense.

(vii) Default Interest and Costs of Collection. In the event of an uncured default by the Reorganized Debtors to ANI under this Plan, then, on and after the date of such uncured default, default interest of ten percent (10%) (inclusive of, and not in addition to, non-default interest) shall accrue on the amount of the Allowed ANI Secured Claim remaining unpaid, until the same, together with all applicable fees, costs, and expenses, are repaid in full. Additionally, upon such uncured default, ANI shall be entitled to its reasonable attorney's fees, expenses, costs, other fees, and costs of collection, as otherwise allowed under Texas law, all secured by ANI's liens and rights against the Property.

4.3.5 Postconfirmation Documents. This Plan, including the treatment of the Allowed ANI Secured Claim, is self effectuating and does not need any other documents or instruments to become effective or otherwise, and the ANI Loan Documents shall be ineffective on the Effective Date. However, upon the reasonable request of ANI, the Dove Creek Debtors and/or the Reorganized Debtors shall negotiate, execute, and deliver to ANI such reasonable amendments or modifications to the ANI Loan Documents to: (i) evidence the treatment of the Allowed ANI Secured Claim under this Plan; and (ii) preserve reasonable protections to ANI and of ANI's interests as provided for in the ANI Loan Documents, so long as the same are legally, factually, and practically compatible with this Plan, including all provisions related to the maintenance of insurance and reporting. Notwithstanding the foregoing, no provision related to insolvency, bankruptcy, other Secured Claims, debt-service-coverage-ratio or similar nonmonetary covenant, or other provisions or covenants in the ANI Loan Documents, shall be subject to the foregoing amendments or modifications, instead being wholly superseded by the terms of this Plan. The Bankruptcy Court shall determine, by motion practice, any dispute under this paragraph, with the goal of providing ANI reasonable postconfirmation non-monetary covenants and protections while not removing from the Reorganized Debtors the benefits of this Plan, such as by creating a future default through no fault of the Reorganized Debtors.

4.3.6 Temporary Injunction. So long as the Reorganized Debtors are not in default of their obligations to ANI under this Plan, including with respect to Section 4.3.4 above, ANI shall temporarily be enjoined from filing, prosecuting, or otherwise pursuing collection or enforcement actions against any Guarantor of the Allowed ANI Secured Claim, including Darren B. Casey, solely with respect to the obligations comprising the Allowed ANI Secured Claim. The injunction set forth herein shall automatically and immediately terminate upon (i) any default under this Plan to ANI; (ii) conversion or dismissal of the Bankruptcy Case; (iii) appointment of a trustee or examiner with expanded powers; or (iv) termination, reversal, vacatur, or stay of the Confirmation

Order. Subject only to said temporary injunction, nothing in this Section or this Plan shall impair, prejudice, alter, release, waive, satisfy, limit, or enjoin ANI from exercising any rights or remedies against any Guarantor or other non-Debtor obligor with respect to any obligations not indefeasibly paid in full in cash, including any obligations of the Remaining Debtors to ANI.

4.3.7 Impairment. Class 3 is impaired under this Plan.

4.4 Class 4: Other Secured Claims.

4.4.1 Identification of Class. Class 4 consists of Secured Claims that are not the ANI Secured Claim or Secured Tax Claims. As of the filing of this Plan, the Dove Creek Debtors are not aware of any such claims. This Class is therefore a protective Class in the event that there are any such claims that survive under section 506(d) of the Bankruptcy Code or the revesting of assets in the Reorganized Debtors under this Plan, without prejudice to the Debtors' argument that no such claim or lien would so survive.

4.4.2 Identification of Subclass. Each Class 4 claim shall be separately classified under this Plan for voting purposes only (and not for distribution purposes) into its own subclass.

4.4.3 Allowance of Claim. Unless expressly Allowed elsewhere in this Plan, each Class 4 Other Secured Claim shall remain subject to Allowance as is otherwise appropriate under the Bankruptcy Code, this Plan, and governing law. The Dove Creek Debtors reserve the right to object to any Class 4 Claim, which right is vested in the Reorganized Debtors. Any Other Secured Claim that is filed prior to the Effective Date shall automatically be a Disputed Claim.

4.4.4 Liens. Without prejudice to the Dove Creek Debtors' and Reorganized Debtors' arguments that no lien securing a Class 4 Other Secured Claim survives the confirmation of this Plan or the Dove Creek Debtors' discharge, and only to the extent that the Bankruptcy Court holds that it does so survive, then the holder thereof shall retain any lien or security interest securing such claim, subject to section 506(a) of the Bankruptcy Code and only to the extent so provided under section 506(a) of the Bankruptcy Code.

4.4.5 Interest. No Class 4 Claim shall accrue or be paid interest for any period after the Petition Date (including after the Effective Date), nor shall any holder of such Claim be entitled to attorneys' fees, costs, expenses, penalties, or other charges, except to the extent otherwise required by a Final Order of the Bankruptcy Court or applicable law after determination of the validity, extent, and priority of such Claim and any associated lien rights.

4.4.6 Treatment. Solely to the extent that a Class 4 Other Secured Claim becomes Allowed by Final Order, the Reorganized Debtors shall either: (i) surrender the collateral securing the same in full and final satisfaction, release, and discharge thereof; or (ii) pay to the holder thereof the Allowed amount of such claim in full and final satisfaction, release, and discharge thereof.

4.4.7 Impairment. Class 4 is not impaired under this Plan.

4.5 Class 5: Unsecured Claims.

4.5.1 Identification of Class. Class 5 consists of the Unsecured Claims.

4.5.2 Allowance of Claim. Unless expressly Allowed elsewhere in this Plan, each Unsecured Claim shall remain subject to Allowance as is otherwise appropriate under the Bankruptcy Code, this Plan, and governing law. The Dove Creek Debtors reserve the right to object to any Unsecured Claim, which right is vested in the Reorganized Debtors.

4.5.3 Interest. No Unsecured Claim shall accrue or be paid interest for any period after the Petition Date (including after the Effective Date), nor shall any holder of an Unsecured Claim be entitled to attorneys' fees, costs, expenses, penalties, or other charges except to the extent otherwise required by a Final Order of the Bankruptcy Court or applicable law.

4.5.4 Default Treatment. In full and final satisfaction, release, and discharge of each Allowed Unsecured Claim, the Reorganized Debtors shall pay each Allowed Unsecured Claim, to the extent Allowed, without interest and without attorney's fees or expenses, in full through eight (8) equal quarterly payments, with the first such payment due by the end of the first full calendar quarter following the calendar quarter in which the Effective Date occurs, and continuing with the end of each succeeding calendar quarter.

4.5.5 Optional Treatment. In lieu of the treatment provided for under section 4.5.4 of this Plan, each holder of an Unsecured Claim may affirmatively elect, in full and final satisfaction, release, and discharge of its Unsecured Claim, to be paid fifty percent (50%) of the Allowed amount thereof by the Reorganized Debtors in cash and within ten (10) days of the same becoming Allowed. The ballot for each Class 5 Creditor shall be marked with this option, which must be affirmatively selected in order for this section 4.5.5 to apply to the Class 5 Claim.

4.5.6 Impairment. Class 5 is impaired under this Plan.

4.6 Class 6: Equity Interests. All Equity Interests are preserved and shall be reinstated by the respective holder(s) thereof under this Plan. Class 6 is not impaired under this Plan.

## ARTICLE V.
## MEANS FOR IMPLEMENTATION OF THE PLAN

5.1 No Consolidation. Except where expressly provided otherwise in this Plan, there is no substantive consolidation, in whole or in part, of the Dove Creek Debtors and the Dove Creek Estates, whether for Allowance, payment, or other purposes. Each Dove Creek Debtor and its corresponding Reorganized Debtor shall be obligated to pay only such Claims as are Allowed against it and not against any other Dove Creek Debtor, and the property of each Dove

Creek Debtor and Dove Creek Estate shall remain its property and shall vest in the corresponding Reorganized Debtor, except to the extent that this Plan expressly provides for joint or joint and several liability.

5.2 Funding of Plan Payments. The Reorganized Debtors shall make Plan payments from cash on hand after the Effective Date, and from rents and other revenues after the Effective Date, all of which shall remain subject to the liens of ANI. The final payment on the Allowed ANI Secured Claim shall be made from a refinancing or sale of the Property.

5.3 Vesting of Assets. On the Effective Date, and automatically without need for further document or order, all property of the Dove Creek Debtors and the Dove Creek Estates shall vest in the respective Reorganized Debtor free and clear of all claims, liens, interests and encumbrances, except: (i) liens securing the Allowed ANI Secured Claim, which shall be preserved and remain in full force and effect until indefeasible payment in full in cash; (ii) liens securing any Allowed Secured Tax Claim, which shall be preserved and remain in full force and effect until indefeasible payment in full in cash; (iii) any other liens securing the Other Secured Claims, to the extent the Bankruptcy Court determines that any such liens survive the Confirmation Order; and (iv) all claims, liens, interests and encumbrances expressly preserved or created under this Plan or applicable Final Order.

5.4 Discharge of Liens. To the extent that any lien or security interest is vacated or discharged under this Plan or the Confirmation Order, or otherwise does not survive the Confirmation Order, the same is vacated, released, and of no force and effect. No further document or instrument is necessary to effectuate the same. The Reorganized Debtors may record this Plan and Confirmation Order as conclusive evidence of the same. They may further seek an order from the Bankruptcy Court confirming the same. The holders of any such vacated or discharged liens shall be enjoined and prohibited from seeking to enforce such liens, including through foreclosure or lawsuit.

5.5 Assumption of Liabilities. On the Effective Date, and automatically without need for further document or order, the Reorganized Debtors shall assume only such liabilities of the Dove Creek Debtors and the Dove Creek Estates as expressly and explicitly assumed, provided for, or created by this Plan, subject to all available remedies, defenses, and setoffs against the same, and to be paid only as provided for in this Plan.

5.6 Executory Contracts.

5.6.1 Operating Agreements. On the Effective Date, and automatically, without need for further order or action, each company or operating agreement of the Dove Creek Debtors, to the extent that it is an Executory Contract, shall be assumed by the Dove Creek Debtors and assigned to or otherwise retained by the Reorganized Debtors. No Cure Claim shall be payable. No further document or instrument is necessary to effectuate the same.

5.6.2 Tenant Leases. On the Effective Date, and automatically, without need for further order of action, each Tenant Lease shall be assumed by the Dove Creek Debtors and the Reorganized Debtors. Any Cure Claim payable for the same shall be paid by the Reorganized Debtors when and as due in the ordinary course of business.

5.6.3 Other Executory Contracts. All other Executory Contracts that have not been rejected or assumed on the Effective Date shall be either rejected or assumed under section 365 of the Bankruptcy Code, together with any applicable Cure Claims, by the Dove Creek Debtors on the Effective Date as provided for in a Plan Supplement to be filed and served no later than fourteen (14) days prior to the Confirmation Hearing.

5.7 Automatic Stay. The automatic stay provided by section 362(a) of the Bankruptcy Code shall remain in effect through the Effective Date with respect to the Dove Creek Debtors and the Dove Creek Estates, unless otherwise specifically modified, annulled, or terminated by the Bankruptcy Court pursuant to separate order, and shall terminate on the Effective Date, at which time the discharge and injunction provisions of this Plan, the Confirmation Order, and the Bankruptcy Code shall control.

5.8 Rights Under Section 505. All Claims for taxes by Governmental Units and any claim to a refund regarding the same or other relief regarding the same shall remain subject to section 505 of the Bankruptcy Code and shall vest in the Reorganized Debtors. The Reorganized Debtors may seek relief pursuant to section 505 of the Bankruptcy Code as a part of, and in conjunction with, any objection to any claim for taxes by a Governmental Unit.

5.9 Management of the Reorganized Debtors. On and after the Effective Date, the Reorganized Debtors shall continue to be managed as they are at present.

5.10 Corporate Existence. The Reorganized Debtors shall retain the Dove Creek Debtors' corporate existence and governing charters, articles, membership agreements, and bylaws, together with all tax and corporate attributes otherwise applicable to the Dove Creek Debtors, together with all tax attributes.

5.11 Incorporation of Exhibits. Any exhibits to this Plan, or any supplements to this Plan filed prior to the conclusion of the Confirmation Hearing, shall automatically become part of this Plan if it is intended to address any issue in this Plan and if it is intended to become a part of this Plan.

5.12 Prepayment. For the avoidance of doubt, the Reorganized Debtors may prepay any Claim that they are responsible to pay under this Plan to the extent such prepayment is permitted under applicable orders, which prepayment shall be without future interest, prepayment premium, prepayment penalty, or any yield maintenance.

5.13 Default and Cure. In the event of any default by the Reorganized Debtors under this Plan, where such default is capable of monetary or other cure, and expressly excluding any default that is a maturity default, which cannot be cured, any affected Creditor may transmit notice of such default to the Reorganized Debtors as provided for below in this Plan, whereafter the Reorganized Debtors shall have five (5) Business Days after the transmission of said notice to cure said default. If the Reorganized Debtors fail to fully cure said default during said period, then they shall be in uncured default of this Plan and any affected Creditor may take any and all actions otherwise authorized under this Plan or any lien instrument. Any amended or modified ANI Loan Documents may provide for additional default, cure, deadline, and other provisions applicable to non-monetary defaults thereunder, in which case such provisions shall control.

5.14 Remaining Debtors and Estates. For the avoidance of doubt, this Plan affects and addresses the assets and liabilities of the Dove Creek Debtors and the Dove Creek Estates only, to the exclusion of the Remaining Debtors and the Remaining Estates, unless a specific provision of this Plan expressly and specifically provides otherwise. Among other things, any claim, lien, encumbrance, or other interest asserted or assertable by any of the Remaining Debtors against the Dove Creek Debtors or the Dove Creek Estates shall be determined, allowed, or disallowed, the same as any other claim, including by being subject to the Bar Date and the discharge.

5.15 Inter-Debtor Claims. On the Effective Date, a Claim by one of the Dove Creek Debtors against another of the Dove Creek Debtors or Dove Creek Estates is cancelled solely for administrative purposes and shall not affect third-party rights, secured creditors liens, or priorities.

## ARTICLE VI.
## ACCEPTANCE OR REJECTION OF PLAN

6.1. Impairment Controversies. If a controversy arises as to whether any Class is impaired under this Plan, such Class shall be treated as specified in this Plan unless the Bankruptcy Court shall determine such controversy differently upon motion of the party challenging the characterization of a particular Class under this Plan.

6.2. Classes and Claims Entitled to Vote. Classes 2, 3, and 5 are impaired and entitled to vote on this Plan. Classes 1, 4 and 6 are not impaired and are deemed to accept this Plan, subject to any objection to confirmation of this Plan.

## ARTICLE VII.
## TREATMENT OF DISPUTED CLAIMS AND OBJECTIONS TO CLAIMS

7.1. Objection Deadline. Any objection to a Claim not otherwise Allowed under this Plan must be filed by the Claims Objection Deadline or be forever barred and waived. Except as expressly provided in this Plan, any Claim that is not a Disputed Claim, Disallowed Claim, or that is not objected to by the Claims Objection Deadline shall be deemed to be an Allowed Claim of the type and priority asserted in the Claim. Provided that a claim objection is filed prior to the Claims Objection Deadline, such objection may be amended thereafter to assert any other applicable objection or grounds for objection, together with any other relief as otherwise appropriate. Unless arising from an Avoidance Action, any Proof of Claim filed after the Effective Date shall be of no force and effect and need not be objected to. Any Disputed Claim may be litigated to Final Order. The Reorganized Debtors may compromise and settle any Disputed Claim without the necessity of any further notice or approval of the Bankruptcy Court, and Bankruptcy Rule 9019 shall not apply to any settlement of a Disputed Claim after the Effective Date. Nothing in this Plan extends any Bar Date set in the Bankruptcy Case or grants any Creditor any greater rights with respect to a late filed Claim than such Creditor has.

7.2. Creditor Response to Objection. With respect to any objection to a Claim when such objection is filed after the Effective Date but otherwise in compliance with this Plan, the Creditor whose Claim was the subject of the objection must file with the Bankruptcy Court and serve a response to the objection upon the Reorganized Debtor and the objecting party no later than the expiration of thirty (30) days from the date of service of any such objection. Failure to

file and serve such a response within the thirty (30) days shall cause the Bankruptcy Court to enter a default judgment against the non-responding Creditor and thereby grant the relief requested in the Objection without further notice to such Creditor. Any such objection shall contain prominent negative notice language informing the objected-to creditor of the same.

7.3. No Waiver of Right to Object. Except as expressly provided in this Plan, nothing contained in the Disclosure Statement, this Plan, or the Confirmation Order shall waive, relinquish, release, or impair any Reorganized Debtor's or other appropriate party-in-interest's right to object to any Claim. A Claim that is specifically Allowed in this Plan shall not be subject to any objection and shall be conclusively Allowed in the Bankruptcy Case, except to the extent that such Claim is subsequently asserted in an amount, priority, or classification otherwise than that specifically Allowed in this Plan.

7.4. Miscellaneous Provisions for Disputed Claims. Nothing contained in this Plan, the Disclosure Statement, or Confirmation Order shall change, waive or alter any requirement under applicable law that the holder of a Disputed Claim must file a timely Proof of Claim, and the holder of such Disputed Claim who is required to file a Proof of Claim and fails to do so, shall receive no distribution through the Plan and the Claim shall be discharged, unless this Plan specifically and explicitly provides otherwise. The adjudication and liquidation of Disputed Claims is a determination and adjustment of the debtor/creditor relationship, and is therefore an exercise of the Bankruptcy Court's equitable power to which the legal right of trial by jury is inapplicable. The holder of any Disputed Claim shall not have a right to trial by jury before the Bankruptcy Court with respect to any such Claim, except with respect to any potential personal injury or wrongful death claim. Exclusive venue for any proceeding involving a Disputed Claim shall be in the Bankruptcy Court or District Court in the Northern District of Texas, Fort Worth Division, unless the Bankruptcy Court or District Court withdraw the reference, transfer a proceeding, or abstain. Disputed Claims shall each be determined separately, except as otherwise ordered by the Bankruptcy Court. The Reorganized Debtors shall retain all rights of removal to federal court as to any proceeding involving a Disputed Claim.

7.5. Allowance of Disputed Claims. All Disputed Claims shall be liquidated and determined as follows:

7.5.1. Application of Adversary Proceeding Rules. Unless otherwise ordered by the Bankruptcy Court, the proceeding involving a Disputed Claim or any objection to a Disputed Claim shall be subject to Rule 9014 of the Bankruptcy Rules. However, any party may move the Bankruptcy Court to apply the Bankruptcy Rules applicable to adversary proceedings. The Reorganized Debtors may, at their election, make and pursue any objection to a Claim in the form of an adversary proceeding.

7.5.2. Scheduling Order. Unless otherwise ordered by the Bankruptcy Court, or if the objection is pursued as an adversary proceeding, a scheduling order may be entered as to each objection to a Disputed Claim upon the filing of a response thereto by the holder thereof. The Reorganized Debtors may tender a proposed scheduling order with each objection and include a request for a scheduling conference for the entry of a scheduling order.

7.5.3. Mediation. The Bankruptcy Court may order the parties to mediate in connection with any objection to a Disputed Claim. The Reorganized Debtors may include a request for mediation in its objection, and request that the Court require mediation as part of the scheduling order.

7.5.4. Post-Substantial Consummation. All distributions of any kind made to any of the holders of Allowed Claims after Substantial Consummation and any and all other actions taken under this Plan after Substantial Consummation shall not be subject to relief, reversal, or modification by any court unless the implementation of the Confirmation Order is stayed by an order issued under the Bankruptcy Rules.

7.5.5 Offsets. The Reorganized Debtors shall retain all rights of offset or recoupment and all counterclaims against any holder of a Disputed Claim, unless specifically released in this Plan.

7.6 Amendments to Claims; Claims Filed After the Confirmation Date. Except as otherwise provided in the Plan, and subject to the Bar Date, a Claim may not be filed with the Bankruptcy Court or amended after the Confirmation Date without the prior authorization of the Bankruptcy Court. Except as otherwise provided in the Plan, any new or amended Claim filed with the Bankruptcy Court after the Confirmation Date without such prior authorization shall be deemed disallowed in full and expunged without need for any action by the Reorganized Debtors or approval of the Bankruptcy Court.

## ARTICLE VIII
## EFFECTS OF PLAN CONFIRMATION

8.1 Discharge. On the Effective Date, and automatically, without need for further document, order, or action, each Dove Creek Debtor shall be discharged of all Claims arising prior to the Effective Date pursuant to the provisions of section 1141(d) of the Bankruptcy Code. Notwithstanding the foregoing, nothing in this Section shall affect any obligations arising under this Plan, the Confirmation Order, or any post-Effective Date default or enforcement right as modified by this Plan.

8.2 Plan Injunction. Effective immediately on the Effective Date, and without need for further order, document, action, or instrument, the Confirmation Order shall, and shall be deemed to, permanently enjoin all Persons from taking any of the following actions on account of any Claim: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against the Dove Creek Debtors or the Dove Creek Estates or any of their property, or against the Reorganized Debtors and the Reorganized Estates or any of their property, on account of a Claim or debt that is discharged under this Plan; (ii) enforcing, levying, attaching, collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against the Dove Creek Debtors or the Dove Creek Estates or their property, or against the Reorganized Debtors and the Reorganized Estates or any of their property, on account of a Claim or debt that is discharged under this Plan; (iii) creating, perfecting or enforcing in any manner directly or indirectly, any lien, charge or encumbrance of any kind against the Dove Creek Debtors or the Dove Creek Estates or their property, or against the Reorganized Debtors and the Reorganized

Estates or any of their property, on account of a Claim, interest, lien, or debt that is discharged under this Plan, unless specifically and expressly permitted in this Plan; and (iv) proceeding in any manner in any place whatsoever against the Reorganized Debtors or their property, or against the Reorganized Debtors or any of their property, with respect to any property to be distributed or transferred under the Plan or Claim that is subject to this Plan, including funds or reserves held or maintained by any of them pursuant to this Plan, in any way that does not conform to, or comply, or is inconsistent with, the provisions of this Plan; *provided*, *however*, that such injunction shall not preclude any party in interest from seeking to enforce or interpret the terms of the Plan through an action commenced in the Bankruptcy Court or other appropriate court, from appealing the Confirmation Order, or from filing a continuation statement to continue in effect a perfected security interest that survives the Effective Date.

8.3 No Liability for Solicitation or Participation. Pursuant to section 1125(e) of the Bankruptcy Code, any Person that solicits acceptances or rejections of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan.

8.4 Exculpation. Except as specifically provided for herein, on and after the Effective Date, and without the need for further action, the Plan and Confirmation Order shall constitute a release and discharge of all actions, causes of action, claims, suits, debts, damages, judgments, liabilities, and demands whatsoever, whether matured or unmatured, whether at law or in equity, whether before a local, state, or federal court, state or federal administrative agency or commission, regardless of location and whether now known or unknown, liquidated or unliquidated, that any of the Dove Creek Debtors or their Estates may have or be able to assert against: (i) Munsch Hardt Kopf & Harr, P.C., and its attorneys, shareholders, employees, and agents; (ii) Stout Risius Ross, LLC, and its principals, employees, and agents, including Douglas J. Brickley, after the Petition Date through the Effective Date, solely for any actions or inactions taken by any of the foregoing in, or arising against the foregoing as a result of, the Bankruptcy Case, the Disclosure Statement, or the Plan, including with respect to the negotiation, execution, and delivery of any document or instrument in connection with the Plan; *provided, however,* that nothing contained in this Plan or the Confirmation Order shall relieve any of the foregoing from the normal requirements applicable to the allowance of an Administrative Claim or Professional Claim if approval from the Bankruptcy Court for such allowance is required, and no defenses to said allowance are waived or released; *provided further, however,* that nothing in this Plan releases any claim against any of the foregoing for gross negligence, willful misconduct, fraud or intentional act.

## ARTICLE IX
## CONDITIONS PRECEDENT

9.1. Conditions Precedent to Confirmation and Effectiveness of Plan. The Plan shall not become effective until the following conditions shall have been satisfied or waived in writing by the Dove Creek Debtors: (i) the Confirmation Order shall have been entered, in form and substance acceptable to the Dove Creek Debtors; (ii) on the fifteenth (15th) day after the Confirmation Date, no notice of appeal of the Confirmation Order shall have been filed or, if filed, no order staying the Confirmation Order shall have been entered by such date; (iii) all other

specific condition precedent contained in this Plan shall have been satisfied; and (iv) a notice of the Effective Date shall have been filed by the Debtor in the Bankruptcy Case.

9.2. Non-Occurrence of the Effective Date. If the Plan is confirmed but the Effective Date does not occur by November 15, 2026, unless such date is extended by the Dove Creek Debtors: (i) the Confirmation Order shall be deemed vacated; (ii) all bar dates and deadlines established by the Plan or the Confirmation Order shall be deemed vacated; (iii) the Bankruptcy Case will continue as if confirmation of this Plan had not occurred; and (iv) this Plan will be of no further force and effect, with the result that the Dove Creek Debtors and other parties-in-interest will be returned to the same position as if confirmation had not occurred. The failure of the Effective Date to occur shall not affect the validity of any order entered in the Bankruptcy Case other than the Confirmation Order or any order based thereon.

9.3. Notice of the Effective Date. On or before three (3) Business Days after occurrence of the Effective Date, the Dove Creek Debtors shall mail to all Persons served with a copy of the Disclosure Statement a notice that informs such Persons of: (i) the occurrence of the Effective Date; (ii) the deadlines established under this Plan for the filing of Administrative Claims, Professional Claims, objections to Claims, and any other pertinent deadlines; (iii) the procedures for requesting notice; (iv) the procedures for changing an address of record; and (v) such other matters as they deem to be appropriate.

9.4. Modification of this Plan. The Dove Creek Debtors may alter, amend or modify this Plan under section 1127 of the Bankruptcy Code or as otherwise permitted by applicable law at any time prior to the Confirmation Date. After the Confirmation Date and prior to the Substantial Consummation of this Plan, the Dove Creek Debtors or any party in interest in the Bankruptcy Case may, so long as the treatment of holders of Claims under this Plan and so long as the protections under this Plan are not materially adversely affected, institute proceedings in the Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in this Plan, the Disclosure Statement or the Confirmation Order, and any other matters as may be necessary to carry out the purposes and effects of this Plan.

9.5. Revocation or Withdrawal of this Plan. The Dove Creek Debtors reserve the right to revoke or withdraw this Plan at any time prior to the Confirmation Date. If the Dove Creek Debtors revoke or withdraw this Plan prior to the Confirmation Date, this Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Dove Creek Debtors or any other Person or to prejudice in any manner the rights of the Dove Creek Debtors or any Person in any further proceedings involving the Dove Creek Debtors.

9.6 Inadmissible Settlement Offer. If the Effective Date does not occur as otherwise provided for in this Plan, the Plan shall be treated as a settlement offer under Federal Rule of Evidence 408 and shall not be used as evidence to prove any alleged liability of the Dove Creek Debtors or the Dove Creek Estates.

## ARTICLE X
## RETENTION OF JURISDICTION AND CLAIMS

10.1. Jurisdiction of Bankruptcy Court. Following the Effective Date, and notwithstanding the entry of the Confirmation Order, the Bankruptcy Court (including, as appropriate, any District Court with jurisdiction over the Bankruptcy Court) shall retain jurisdiction of the Bankruptcy Case and all matters arising in, or related to, the Bankruptcy Case to the fullest extent permitted by law, including jurisdiction to:

10.1.1. To hear and determine motions, applications, adversary proceedings, and contested matters pending or commenced after the Effective Date;

10.1.2. To hear and determine objections (whether filed before or after the Effective Date) to, or requests for estimation of, any Claim, and to enter any order requiring the filing of proof of any Claim before a particular date, and to determine all issues regarding or affecting the Other Secured Claims, their allowance, their security, and their priority;

10.1.3. To ensure that distributions to holders of Allowed Claims are accomplished as provided in the Plan;

10.1.4. To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

10.1.5. To construe and to take any action to enforce this Plan and the Confirmation Order;

10.1.6. To issue such orders as may be necessary for the implementation, execution and consummation of this Plan, including the enforcement of any discharge, release, and/or injunction in this Plan, and to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan and the Confirmation Order;

10.1.7. To hear and determine any applications to modify this Plan, to cure any defect or omission or to reconcile any inconsistency in this Plan, the Disclosure Statement or in any order of the Bankruptcy Court including, without limitation, the Confirmation Order;

10.1.8. To hear and determine all applications for Administrative Claims;

10.1.9. To hear and determine other issues presented or arising under this Plan, including disputes among holders of Claims and arising under agreements, documents or instruments executed in connection with this Plan;

10.1.10. To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

10.1.11. To hear and determine any other matters related hereto and not inconsistent with Chapter 11 of the Bankruptcy Code;

10.1.12 To hear, authorize, and order the sale, free and clear of liens, claims, interests, and encumbrances, of any property, in the event the Reorganized Debtors find it necessary or appropriate to seek an order authorizing the same.

10.1.13. To enter the Final Decree upon proper request;

10.1.14. To command and enjoin any Creditor or Person to comply with the transfer and vesting of property of the Dove Creek Debtors and the Dove Creek Estates free and clear of liens, claims, interests, and encumbrances, as provided for in this Plan, and to command any Creditor or Person to release any lien or security interest required to be released or released by this Plan, or to order that any other Person may due to the same with the same full force and effect;

10.1.15. To hear and determine any action concerning the recovery and liquidation of assets, wherever located, including without limitation litigation to liquidate and recover assets that consist of claims, rights and causes of action against third parties and actions seeking declaratory relief with respect to issues relating to or affecting assets; and to hear and determine any action concerning the determination of taxes, tax refunds, tax attributes, and tax benefits and similar or related matters with respect to the Dove Creek Debtors or the Dove Creek Estates, including, without limitation, matters concerning federal, state, local and other taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code; and

10.1.16 To hear and determine any Avoidance Actions.

10.2. Failure of Bankruptcy Court to Exercise Jurisdiction. If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction, or is otherwise without jurisdiction, over any matter arising under, arising in or related to the Bankruptcy Case, including with respect to the matters set forth above in Plan, this Article shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such subject matter.

10.3. No Creation of Jurisdiction. This Plan does not create jurisdiction in the Bankruptcy Court but only retains the Bankruptcy Court's jurisdiction as it otherwise exists. For the avoidance of doubt, where the Bankruptcy Court has no jurisdiction, or has lost jurisdiction through abstention, remand, withdrawal of the reference, or otherwise, this Plan does not purport to create or reinstate said jurisdiction; *provided, however*, that this Plan, while not creating or reinstating such jurisdiction, does not prejudice or limit the ability of the Bankruptcy Court to otherwise exercise such jurisdiction as may otherwise be conferred or reinstated.

10.4. Retention and Preservation of General Rights. Notwithstanding the confirmation of the Plan and the entry of the Confirmation Order, and notwithstanding any principle of *res judicata* or otherwise, and unless specifically and explicitly released, waived, compromised, or otherwise treated in this Plan, the Dove Creek Debtors and the Dove Creek Estates retain any and all rights, property, and interests, regardless of whether they are scheduled, filed, or asserted

prior to the Confirmation Hearing, including, without limitation, all: (i) defenses to Claims; (ii) affirmative defenses to Claims; (iii) setoffs and recoupments against any Claim, Creditor, or other person; (iv) rights to turnover, accounting contribution, indemnification, or reimbursement against any Creditor or other person; (v) rights under any loan document modified by this Plan, but only as so modified; (vi) rights to any tax refund belonging to the Dove Creek Debtors; and (vii) claims and causes of action against any Creditor or person whatsoever, including for affirmative relief and to reduce any liability.

10.5 Retention and Preservation of Specific Rights. Without limiting the effectiveness or generality of the foregoing, and out of an abundance of caution, the Dove Creek Debtors and the Dove Creek Estates specifically reserve and retain the following claims and causes of action, which shall in no way be extinguished, released, or prejudices as a result of the confirmation of this Plan, and which are transferred to the Reorganized Debtors and the Reorganized Estates:

(i) the Avoidance Actions;

(ii) objections to all Other Secured Claims, and the determination of the validity, extent, and priority of any liens securing the same;

(iii) all rights against any holder of taxes, whether for past, present, or future taxes, including any right for purposes of future valuations, assessments, and taxes, arising under or related to section 505 of the Bankruptcy Code; and

(iv) all causes of action of the Dove Creek Estates.

## ARTICLE XI
## MISCELLANEOUS PROVISIONS

11.1. Payment of Statutory Fees. All fees payable pursuant to section 1930 of Title 28 of the United States Code arising prior to the Effective Date, shall be timely paid by the Reorganized Debtors, subject to the rights of the Reorganized Debtors to contest the same. After the Effective Date, the Reorganized Debtors shall each file individual quarterly reports, in a form reasonably acceptable to the U.S. Trustee, and pay all quarterly fees when they become due until the Bankruptcy Case is closed.

11.2. Exercise of Liens. Any lien preserved or granted in this Plan shall, when permitted to be exercised by this Plan and applicable law, be exercised, enforced, and foreclosed in full and strict conformity with all applicable non-bankruptcy law and agreements, except to the extent specifically modified or preempted in this Plan.

11.3. No Admissions. Notwithstanding anything herein to the contrary, nothing contained in this Plan shall be deemed an admission by the Dove Creek ch Debtors with respect to any matter set forth herein including, without limitation, liability of any person on any Claim or the propriety of any classification of any Claim.

11.4. Plan Controls. To the extent there is an inconsistency or ambiguity between any term or provision contained in the Disclosure Statement and the Plan, the terms and provisions of the Plan shall control.

11.5. Governing Law. Except to the extent the Bankruptcy Code, the Bankruptcy Rules or other federal or state laws are applicable, or any prepetition contract provides for the application of the law of a different state, the laws of the State of Texas shall govern the construction, implementation and enforcement of this Plan and all rights and obligations arising under this Plan, without giving effect to the principles of conflicts of law.

11.6. Substantial Consummation of Plan. The Plan shall be deemed to be substantially consummated upon the date of Substantial Consummation.

11.7. Successors and Assigns. The rights, benefits and obligations of any Person named or referred to in this Plan will be binding upon, and will inure to the benefit of, the heir, executor, administrator, representative, successor, or assign of such Person.

11.8. Severability. Should the Bankruptcy Court determine, on or prior to the Confirmation Date, that any provision of this Plan is either illegal or unenforceable on its face or illegal or unenforceable as applied to any Claim or Person, the Dove Creek Debtors may, in their discretion, alter, delete, or modify such provision to make it valid and enforceable to the maximum extent practicable consistent with the original purpose of such provision. Notwithstanding any such determination, interpretation, or alteration, the remainder of the terms and provisions of this Plan shall remain in full force and effect, provided that the Bankruptcy Court otherwise confirms the Plan.

11.9. Notices and Distributions. On and after the Effective Date, all notices, requests and distributions to a holder of a Claim shall be sent to the last known address of: (i) the holder or its attorney of record as reflected in the holder's Proof of Claim or Administrative Claim filed by or on behalf of such holder; or (ii) if there is no such evidence of a last known address, to the last known address of the holder according to the books and records of the Dove Creek Debtors. Any holder of a Claim may designate another address for the purposes of this section by providing the Reorganized Debtors written notice of such address, which notice will be effective upon receipt by the Reorganized Debtors as otherwise appropriate.

Any notices required to be sent under this Plan to the Reorganized Debtors may be sent as follows:

To the Reorganized Debtors:

TADC Property Owner, Ltd., *et al.*
Attn: Darren B. Casey
200 E. Basse, Suite 300
San Antonio, Texas 78209

with a copy to:

TADC Property Owner, Ltd., *et al.*
c/o Munsch Hardt Kopf & Harr, P.C.
Attn: Garrick C. Smith
500 N. Akard Street, Suite 4000
Dallas, Texas 75201

11.10. Interest. In connection with this Plan and all instruments issued in connection therewith and distributions thereon, "interest" when applied to time-compensation for a debt

shall mean simple interest accruing on an annual basis with regard to outstanding principal debt unless expressly stated otherwise therein.

11.11 Unclaimed Property. If any property to be distributed on account of this Plan remains unclaimed for a period of one (1) year after it has been delivered (or delivery has been attempted) or has otherwise been made available, such unclaimed property shall be forfeited by the Person entitled to receive the property and the unclaimed property and the right to receive it shall revert to and vest in the Reorganized Debtors.

11.12. Binding Effect. The Plan shall be binding on and inure to the benefit of the holders of Claims and Equity Interests (whether or not they have voted to accept or reject the Plan and whether or not they have filed a Proof of Claim or proof of interest) and their respective personal representatives, successors and assigns, and all parties-in-interest, as provided for by the Bankruptcy Code.

11.13. Withholding and Reporting. In connection with this Plan and all instruments issued in connection therewith and distributions thereon, the Reorganized Debtors shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority and all distributions hereunder shall, to the extent applicable, be subject to any such withholding and reporting requirements. Notwithstanding anything herein to the contrary, in calculating and making the payments due to Allowed Claims hereunder, the Reorganized Debtors shall be authorized, but not required, to deduct from such payments any necessary withholding amount.

11.14. Credit for Non-Debtor Payments. Notwithstanding the Allowance of a Claim under this Plan or otherwise, the Reorganized Debtors shall be entitled to a credit against their obligations under this Plan for each Claim on account of which the holder thereof obtains any recovery from a non-debtor or from the property of a non-debtor. In no event shall a Claim be entitled to more than one, full satisfaction, regardless of source.

## ARTICLE XII
## CONFIRMATION REQUEST

The Dove Creek Debtors hereby request confirmation of this Plan pursuant to section 1129(a) of the Bankruptcy Code or, in the event that this Plan is not accepted by each of those Classes of Claims entitled to vote, section 1129(b) of the Bankruptcy Code.

[*Remainder of page intentionally left blank*]

Dated: ~~August 22~~September 16, 2026

**FOR THE DOVE CREEK DEBTORS:**

/s/ Douglas J. Brickley
Douglas J. Brickley
Chief Restructuring Officer

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/ Davor Rukavina
Davor Rukavina, Esq.
Texas Bar No. 24030781
Thomas D. Berghman, Esq.
Texas Bar No. 24082683
Garrick C. Smith, Esq.
Texas Bar No. 24088435
Jonathan S. Petree, Esq.
Texas Bar No. 24116897
500 N. Akard Street, Suite 4000
Dallas, Texas 75201-6659
Telephone: (214) 855-7500

**ATTORNEYS FOR THE
DOVE CREEK DEBTORS**